**HUFF v GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15881. Decided March 29, 1937

Orgill, Maschke & Wickham, Cleveland, for plaintiff-appellee.

Newcomb, Nord & Hornbeck, Cleveland, and Ray T. Miller, Cleveland, for defendant-appellant.

MONTGOMERY, PJ, SHERICK and LEMERT, JJ, (5th Dist) sitting by designation.

### OPINION

By MONTGOMERY, PJ.

An appeal was perfected to this court from a judgment for $19,847.88, awarded the appellee by the Common Pleas Court, upon the submission of the cause to the court without the intervention of a jury. This judgment represents the amount with interest which would have been earned by appellee from September 1, 1928, to June 1, 1930, had he been permitted to continue his employment with appellants, less the amount actually earned by him in other ways during that period.

In spite of the very long record of the proceedings of the lower court, in spite of the varied ramifications of the evidence, in spite of the well-studied and elaborate briefs submitted by counsel, the issue seems to us exceedingly simple. Its solution depends upon two questions and the answers to be given them, to-wit, What was the contract between the parties, and did the appellants violate it, thereby entitling the appellee to resort to the courts for relief?

One of the departments of the Grand International Brotherhood of Locomotive En-

gineers is designated "The Financial and Investment Department." In it were included all holdings, investment, security, realty and other institutions, and all banks in which the Brotherhood might be interested. The record shows that this Department had entered upon numerous and varied enterprises involving tremendous sums of money; that prior to and in 1927, many of these enterprises were in desperate financial straits; that the affairs of this department were complicated, involved and almost chaotic.

At the 1927 triennial convention of the Order, held in May and June of that year, the constitution was amended, and all activities of the Financial and Investment Department, except the B. of L. E. Co-Operative National Bank of Cleveland, were placed in charge of a board of trustees of three members to be elected at such convention. Huff was one of the trustees so elected. Incidentally, this plan was terminated at the 1930 convention.

At this same 1927 convention, before the election of the trustees, and as a part of the amendment, resolutions were adopted which appear as §§54 and 55, and which are controlling in this controversy.

Section 54 provided that the trustees should be in active charge and have full control over the activities of the Financial and Investment Departments, except as otherwise provided in the Constitution. It directed that they "Shall make a comprehensive report of the department and its activities to the triennial convention, and to the committee of eight, at the beginning of the annual meetings of said committee, together with a complete audit and full detailed expense accounts of the Board of Trustees, covering the year immediately preceding the annual meeting of said committee and will furnish during the annual meeting of the committee such additional information as the committee may require."

Section 55 provided for a "committee of eight" which should hold annual meetings beginning in July of each year. It recites that:

"The Committee of Eight shall have no supervision or control of any kind whatsoever over the activities of the Board of Trustees of the Financial and Investment Department, except as hereafter specifically provided."

Sub-section C of this §55 again enjoins upon the Board of Trustees the duties imposed upon them by §54 heretofore quoted and in almost the same language.

As a part of §55, it was then provided that the Committee of Eight might at any meeting prefer charges against any member of the Board of Trustees and immediately proceed with the trial of the member or members so charged. If, by a two-thirds vote of the Committee of Eight, a member so charged should be found guilty, he should thereby automatically be expelled and his place filled by the Committee. It was further provided that the Committee of Eight should report the expulsion, together with the reasons therefor, to the next succeeding convention, and that the member of the board so expelled might appeal to such convention.

At the 1928 meeting of the Committee of Eight, charges were preferred by the committee against Huff and another member of the Board of Trustees. They were suspended, found guilty and expelled. They appealed to the 1930 convention of the Order, and the convention upheld the action of the Committee of Eight. It is conceded that the expulsion was from the Board of Trustees only, and that Huff still retains his membership in the Order. The period of time for which he claimed salary, and for which he obtained judgment, was from the date of the suspension until the termination of the arrangement by the 1930 convention.

The appellee contended before the Committee of Eight before the convention, before the Common Pleas Court and now contends in this court, that: He did not have a fair trial such as is granted by the laws of the Order; that no valid and sufficient charge was lodged against him; and that his rights as trustee could be terminated only by a court. The Committee of Eight and the convention overruled his contentions. The Common Pleas Court sustained them, and so sustaining him in them, rendered judgment in his favor.

Five separate charges were filed against him and the other named trustee by the Committee of Eight. The first was:

"We charge failure to furnish the Committee with a comprehensive report of the Financial Department."

The second and fourth charges charged mal-administration in certain investments. The third charge was a failure to pursue a policy of liquidation. The fifth charge was a failure to hold stated meetings so that all members of the board might be given the opportunity to record their wishes.

There is in the record evidence to sustain charges two, three, four and five. There was evidence of mal-administration, there was evidence of an intention to perpetuate their positions, rather than to liquidate projects, which latter was the conceded object of their appointment. It is argued with some force that under the heretofore quoted portion of §55, these matters were within their control, rather than within the control of the Committee of Eight. This argument cannot apply to the first charge. Under both §§54 and 55 they were required to furnish the committee with a comprehensive report of their department and its activities, together with a complete audit. This they did not do. Huff and his associate were questioned by the Committee of Eight as to whether they regarded what they had furnished as a comprehensive report. A part of the recorded answer is:

"This is just a summary of some of the operations."

This question was then asked:
"Do you know what the total obligations of the organization were?
The answer was 'No, sir'."

There can be no question of dereliction of duty imposed upon them.

Here is a situation of a convention passing resolutions authorizing the employment of these men, fixing their powers, privileges, duties and limitations. They accepted the employment. They were bound by the conditions imposed. The convention delegated to the Committee of Eight supervisory powers to be used on behalf of the Order. It directed an annual meeting of the committee. It expressly gave the committee power to prefer charges and expel members of this Board of Trustees if found guilty of the charges, subject to the right of appeal. These members of the board became such, knowing of this power in the committee, and subject to the right of the committee to exercise this power, and binding themselves to observe the obligations imposed upon them by the resolutions under which they derived their contractual rights. Such was the agreement or contract between Huff and the Brotherhood.

We see no violation of the contract on the part of the appellant. One, at least, of the charges was justified. The committee proceeded as it was authorized to do. The accused were given a fair hearing. They appealed to the convention. They were given a full and fair hearing on the appeal. The Committee of Eight was sustained. As we see it, the rights of Huff were then fully and finally terminated. He had no cause of action at law.

Much discussion is directed to the claim that here was a trust, and that a trustee is entitled to have his rights determined by a court. Huff was not a trustee in that sense. True, the title given him and his associates was "Board of Trustees." That is simply a term adopted by way of designation. Actually they were simply agents, essentially liquidating agents, employed for a specific purpose, and to render certain services.

Appellant advances the further contention that Huff has not yet exhausted all his remedies, in that he has not yet made a claim within the Brotherhood organization for his salary. It is true he has not done so. However, we regard this as immaterial. If his discharge was justified and regular, it follows that he could not claim compensation.

The judgment of the Common Pleas Court is reversed and final judgment rendered for appellant.

Exceptions may be noted.

SHERICK and LEMERT, JJ, concur.